# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD P. FAUST, | : | No. 3:17cv1236 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
|     v. | : | |
| | : | (Magistrate Judge Saporito) |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of Social | : | |
| Security, | : | |
|     Defendant | : | |

## **MEMORANDUM**

Before the court for disposition is Magistrate Judge Joseph F. Saporito's report and recommendation (hereinafter "R&R") which proposes affirming the decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. (Doc. 13). Plaintiff's action is brought under Section 1383(c)(3) of the Social Security Act and 42 U.S.C. § 405(g). The matter is fully briefed and ripe for disposition.

## Background

Plaintiff Donald P. Faust began his quest for benefits under Title XVI of the Social Security Act on May 9, 2014, when he filed an application for disability due to mental issues. (Doc. 13, R&R at 2). Plaintiff alleges that his disability began

June 30, 2009. (Id.)  At that time, the plaintiff was forty-one years old. (Id.)  After the Social Security Administration (hereinafter "SSA") denied plaintiff's application on August 8, 2014, plaintiff, through his counsel, Patricia A. Shoap, requested a hearing before an Administrative Law Judge (hereinafter "ALJ"). (Id.)

At the hearing on May 12, 2016, ALJ Richard E. Guida learned that the plaintiff, who was now forty-eight years old, resided with his godfather in Chambersburg, Pennsylvania. (Id. at 4).  The plaintiff had been incarcerated for twenty-seven years prior to residing with his godfather. (Id.)  The plaintiff stated at the hearing, among other things, that being around people or crowds makes him feel like he cannot breathe.  He gets afraid and feels the need to go home. (Id.)  He often gets angry and wants to fight other people. (Id.)

The ALJ ultimately found that plaintiff was not disabled under the Social Security Act. (Id. at 3).  Plaintiff sought further review of his claims by the SSA Appeals Council, but his request was denied on May 23, 2017. (Id.)  Thus, the ALJ's decision is the final decision of the Commissioner.

Plaintiff initiated the instant action on July 13, 2017, asking us to reverse the decision of the ALJ and award benefits, or remand for a new hearing. (Doc. 1). Plaintiff seeks this reversal on the grounds that the ALJ's decision to deny his

claim for benefits was not supported by substantial evidence and contains errors of law.

Magistrate Judge Saporito reviewed the record in this case and recommends that the final decision of the Commissioner of Social Security denying plaintiff's benefits be affirmed. (Doc. 13). The plaintiff filed objections to the magistrate judge's R&R. (Doc. 16). On October 31, 2018, the Commissioner filed a response, bringing the case to its present posture. (Doc. 18).

**Jurisdiction**

The court has federal question jurisdiction over this SSA appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall

be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business….").

**Legal Standard**

In disposing of objections to a magistrate judge's R&R, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. S 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

In reviewing a Social Security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "[S]ubstantial evidence has been defined as 'more than a mere scintilla.' " Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427). It means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute their own conclusions for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence

for no reason or for the wrong reason.' " Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Thus, a reviewing court must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2).

The ALJ evaluates disability benefits claims with a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). This analysis requires the ALJ to

consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity; (2) has an impairment, or combination of impairments, that is severe; (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment"; (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4).

Applying the five-step sequential analysis to the instant case, the ALJ found at Step 1 that plaintiff has not engaged in substantial gainful activity since May 9, 2014, the application date. (Doc. 8-2, Trans. of Proceed. at 14). At Step 2, he found that plaintiff had the following severe impairments: bipolar disorder, anxiety disorders, including a panic disorder, obsessive compulsive disorder, a personality disorder, post-traumatic stress disorder, and polysubstance abuse. (Id.) At Step 3, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Id.)

The ALJ next determined that plaintiff has the residual functional capacity (hereinafter "RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple and routine tasks,

7

involving only simple work related decisions and with few, if any, work place change[s]. He is limited to occasional interaction with supervisors, coworkers, and the public." (Id. at 15).

The ALJ then proceeded to Step 4 of the sequential evaluation where he found, after reviewing vocational expert testimony, that plaintiff was "unable to perform any past relevant work." (Id. at 18). The ALJ identified past relevant work as a night auditor and front desk clerk. (Id.)

Finally, at Step 5, the ALJ determined that because plaintiff is a younger individual at 46 years old when he filed his application, has at least a high school education, and is able to communicate in English, plaintiff could successfully adjust to other work. (Id.) Although the ALJ recognized that the plaintiff's ability to perform work at all exertional levels is compromised by his nonexertional limitations, the ALJ ultimately concluded that the plaintiff could work as a janitor, an agricultural produce washer, and an agricultural produce sorter. (Id. at 19). A vocational expert testified at the hearing before the ALJ that these jobs exist in the national economy for an individual with the plaintiff's age, education, work experience, and residual functional capacity. (Id.) As such, because the ALJ concluded that plaintiff is capable of making a successful adjustment to other

work, he determined that plaintiff does not qualify as a disabled individual. Plaintiff then filed the instant appeal.

As noted above, the Clerk of Court assigned plaintiff's appeal to Magistrate Judge Joseph F. Saporito for an R&R. Magistrate Judge Saporito recommends affirming the decision of the Commissioner of Social Security. (Doc. 13). Magistrate Judge Saporito determined that the ALJ's decision to deny plaintiff's claims for disability benefits is supported by substantial evidence in the record. Specifically, the magistrate judge found that: 1) the ALJ did not err by concluding that the plaintiff did not meet the requirements of Listing 12.04 (affective disorders) and Listing 12.06 (anxiety related disorders); and 2) the ALJ appropriately evaluated the opinion evidence of record and afforded the proper weight to plaintiff's treating psychiatrists, Peter Moskel, M.D., and Kawish Garg, M.D., when assessing plaintiff's residual functional capacity (hereinafter "RFC").

The plaintiff objects to Magistrate Judge Saporito's R&R, asserting that plaintiff's mental health condition does meet the Listings for affective or anxiety disorders and that the ALJ was not reasonable in affording limited weight to the expert opinions of plaintiff's treating psychiatrists, Dr. Moskel and Dr. Garg. We will review these objections in turn.

**I. Whether plaintiff's impairment or combination of impairments meets the mental health conditions in Listings 12.04 or 12.06.**

The plaintiff argues that at Step 3 of the analysis, he meets the requirements of Listing 12.04 (affective disorders) and/or Listing 12.06 (anxiety related disorders), and that Magistrate Judge Saporito erred in his review of the Listings.[1] Specifically, the plaintiff contends that the magistrate judge considered the ALJ's review of medical records and opinion evidence at Step 4. This evidence, however, was not used by the ALJ as a basis for his decision at Step 3. The plaintiff points to a specific example of Magistrate Judge Saporito stating that the ALJ attributed limited weight to the opinions of Dr. Moskel and Dr. Garg in his Listings analysis. According to the plaintiff, however, a review of the ALJ's decision confirms that he did not address either Dr. Garg or Dr. Moskel's opinions at Step 3 of his report, and only did so at Step 4. The plaintiff further contends that a review of the ALJ's decision demonstrates that he inappropriately performed a cursory evaluation of the evidence as it related to the Listings.

It appears that the plaintiff is attempting to convince the court that in order to determine whether substantial evidence supports an ALJ's finding, we must look only to the section of the report in which the finding was made. We disagree.

---

[1] The plaintiff originally argued that the ALJ also erred in concluding that he did not meet the requirements of Listing 12.08 (personality disorders). Magistrate Judge Saporito found that the ALJ did not err in this regard. The plaintiff has raised no objection to this finding, thus we limit our review to Listing 12.04 and Listing 12.06.

The plaintiff has put forth no precedent to support this position. Our own review of the law, however, has revealed guidance from the Third Circuit Court of Appeals on this issue. The Court of Appeals instructs that the ALJ's decision must be "read as a whole" when assessing whether substantial evidence supports an ALJ's finding. Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). The ALJ is not required to use any "particular language . . . or format"; rather, the only requirement is that "there is sufficient development of the record and explanation of findings to permit meaningful review." Id. See also Fullen v. Comm'r of Soc. Sec., 705 F. App'x 121, 124 (3d Cir. 2017). The ALJ's evaluation of the evidence must appear in the decision but need not appear specifically in the Listings discussion. See Cop v. Comm'r of Soc. Sec., 226 F. App' x. 203, 208 (3d Cir. 2007).

We now turn to the issue of whether, when looking at the record as a whole, substantial evidence supports the ALJ's determination that the plaintiff did not meet the Listings for affective or anxiety disorders. The ALJ found that the plaintiff did not meet Listings 12.04 and 12.06 because he failed to meet the paragraph B and paragraph C criteria. Paragraph B of Listings 12.04 and 12.06 requires evidence of at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties of maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4)

repeated episode of decompensation, each of extended duration. Paragraph C of Listings 12.04 and 12.06 requires that the claimant's mental disorder be listed as "serious and persistent." We agree with the plaintiff that substantial evidence does not support this finding.

The ALJ analyzed the above-mentioned factors and concluded that the plaintiff had no more than mild restrictions with regard to his daily activities. He noted that the plaintiff does things around his home, takes care of his dog, and mows the grass. (Doc. 8-2, Trans. of Proceed. at 14). The plaintiff denied experiencing problems caring for his personal needs and can prepare simple meals such as frozen dinners for himself. (Id.) The ALJ assigned "great weight" to the state agency psychologist who assessed the plaintiff's functioning and found only mild restrictions in activities of daily living. (Id. at 17).

In terms of social function, the ALJ found that the plaintiff had no more than moderate difficulties. (Id. at 15). The ALJ noted, rather summarily, that because the plaintiff reported anger issues, he clearly suffers from some limitation in this area. (Id.) The ALJ once again gave great weight to the state agency psychologist who opined that the plaintiff's social limitations were only moderate. (Id. at 17).

A review of the record, however, shows that the plaintiff's own treating psychiatrist, Dr. Garg, opined that the plaintiff has an extreme level of difficulty in

maintaining social functioning. (Id. at 444-446). He noted that the plaintiff cannot work with others or by himself in a reasonable manner. (Id. at 441-447). Further, the record reflects numerous instances of plaintiff acting aggressive and belligerent toward medical professionals, at times attempting to physically injure those with whom he comes in contact. It appears to be undisputed that the plaintiff lives with his godfather in a highly supportive environment. (Id. at 505). The plaintiff avoids leaving the home and spends the majority of time in his room. (Id. at 32). He requires frequent reminders to complete tasks around the house. (Id. at 35).

When reviewing plaintiff's concentration, persistence, or pace, the ALJ found that the plaintiff also has moderate difficulties in these areas. (Id. at 15). He noted that the plaintiff alleges difficulty with his memory, concentration, and understanding things. (Id.) While the plaintiff gets frustrated with written instructions, he can follow spoken instructions. (Id.) As for episodes of decompensation, the ALJ found that the plaintiff experienced one episode of decompensation, which was of extended duration. (Id. at 15). On this occasion, plaintiff needed to be hospitalized for detox purposes. (Id.)

Once again, we find that the evidence in the record does not support a finding of moderate difficulties in these areas. The records from the plaintiff's treating physicians include references to plaintiff's racing thoughts, pressured

13

speech, inability to concentrate, poor impulse control, and feelings of being overwhelmed. (Id. 199-221; 224-303; 505-557). Dr. Garg noted an extreme level of impairment in the plaintiff's concentration. (Id. 441-447). The plaintiff himself has testified that he was fired from his previous position as a night auditor due to his inability to maintain attention. (Id. 31-40). We agree with the plaintiff that the record clearly provides substantial evidence of at least a marked level of impairment in this domain.

Finally, as noted above, paragraph C of Listings 12.04 and 12.06 requires that the claimant's mental disorder be listed as "serious and persistent." The ALJ concluded that the evidence failed to establish the presence of such criteria. After a careful review of the evidence above, we disagree. We therefore find that the ALJ's determination that the plaintiff did not meet Listings 12.04 or 12.06 is not supported by substantial evidence.

**II. Whether the ALJ properly afforded little weight to the expert opinions of plaintiff's treating physicians, Dr. Moskel and Dr. Garg.**

The plaintiff also argues that Magistrate Judge Saporito erred by concluding that the ALJ properly afforded limited weight to the expert opinions of the plaintiff's treating psychiatrists, Dr. Moskel and Dr. Garg. The plaintiff contends that the opinions of these doctors would support a finding of disability in this case. Instead, according to the plaintiff, the ALJ discredited their opinions based on a supposed inconsistency between the opinions offered and the

plaintiff's mental health treatment records. Ultimately, the ALJ afforded great weight to the opinion of a nontreating state agency psychological consultant.

The Social Security Regulations provide that "medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Treating physicians, examining physicians, and non-examining physicians may provide medical opinions. 20 C.F.R. § 404.1527(c)(1)-(2). The Regulations provide special deference to medical opinions from treating sources who have "seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment" ("treating source rule"). 20 C.F.R. § 404.1527(c)(2)(i).

The treating source's opinion is entitled to controlling weight, however, "only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record....' " Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202 (quoting 20 C.F.R. § 404.1527(c)(2)). When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ

may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

In choosing to reject the evaluation of a treating physician, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinions only on the basis of contradictory medical evidence. Id. at 317 (citations omitted). An ALJ may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation, or lay opinion. Id. An ALJ may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." Id. at 318 (citation omitted).

In the instant matter, the ALJ determined that the plaintiff had an RFC for a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple and routine tasks, involving only simple work related decisions and with few, if any, work place changes; he is also limited to occasional interaction with supervisors, coworkers, and the public. (Doc. 8-2, Trans. of Proceed. at 15). The record reflects that in coming to his conclusion

16

regarding the plaintiff's RFC, the ALJ weighed the testimony, diagnostic treatment, and opinion evidence available to him.

Ultimately, the ALJ afforded "limited weight" to the opinions of Dr. Garg and Dr. Moskel, the plaintiff's treating psychiatrists. The ALJ found that the psychiatrists' proposed limitations were inconsistent with the plaintiff's treatment records. (Id. at 17). Specifically, the ALJ noted that the records of both Dr. Garg and Dr. Moskel noted a lack of work history by the plaintiff. The record shows, however, that the plaintiff had income from substantial gainful activity from 2004-2009. (Id. at 159-66). The plaintiff also worked as a night auditor from 2007-2009, which, according to the ALJ, calls into question Dr. Garg's direct observation and opinion that the plaintiff never worked and was unable to work. (Id. at 222, 505). Additionally, the ALJ noted that the plaintiff's treatment records indicate a number of normal mental status examinations and several Global Assessment of Functioning (hereinafter "GAF") scores around 60, at least for the last two years. (Id. at 202, 225, 400). Such a range reflects moderate mental symptoms and is consistent with the plaintiff's daily activities, which include reading, watching television, and fishing. (Id. at 17).

We find that the ALJ erred in affording limited weight to the expert opinions of the plaintiff's treating psychiatrists, Dr. Moskel and Dr. Garg. When viewing the record as a whole, it is clear that the plaintiff's treatment records are

17

supportive of Dr. Moskel and Dr. Garg's opinions regarding the plaintiff's work capacity. The records in the case include observations that the plaintiff was often belligerent, aggressive, agitated, and impulsive. (Id. at 200-204; 281-283). Over a period of nearly four years, treatment records cite plaintiff's depression, constant worry, high anxiety, and poor concentration. (Id. 515-520; 533-536).

Further, we are not persuaded that plaintiff's moderate range GAF scores constitute inconsistency with the opinions of plaintiff's treating physicians. A GAF score is a subjective scale that was set forth in the American Psychiatric Associations' Diagnostic and Statistical Manual of Mental Health (hereinafter "DSM"). The score "assesses how well an individual can function according to psychological, social, and occupational parameters, with the lowest scores assigned to individuals who are unable [to] care for themselves." Pounds v. Astrue, 772 F. Supp. 2d 713, 716, n. 2 (W.D. Pa. 2011); DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS (FOURTH).

The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 3-32 (FOURTH). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. In the

past, the score was seen as useful in planning treatment and predicting outcomes.

A GAF score of 31–40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Id. A GAF score of 41–50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id.

The law, however, provides that "[a] GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings." Id. at 723 (see also Gilroy v. Astrue, 351 Fed. Appx. 714, 715 (3d Cir. 2009)). Moreover, the latest edition of the Diagnostic and Statistical Manual of Mental Health recommended that the GAF scoring scale be discontinued. It explained that the GAF scale has a conceptual lack of clarity and "questionable psychometrics in routine practice." DIAGNOSTIC AND STASTICAL MANUAL OF MENTAL DISORDERS (FIFTH) at 16. Thus, the latest edition of the American Psychiatric Association's DSM does not contain the GAF scale. It is apparent that GAF scores are of limited value in determining whether an individual is disabled.

As such, we find that the plaintiff's treating doctors, who have treated the plaintiff over a significant time period, are in the best position to render opinions

on the plaintiff's capacity. Because the opinions of Dr. Garg and Dr. Moskel are well-supported by the clinical and laboratory diagnostic testing in the record, these opinions were entitled to controlling weight.

**Conclusion**

For the foregoing reasons, we find that the ALJ's decision to deny the plaintiff's claims for supplemental security income benefits is not supported by substantial evidence in the record. Thus, we will grant the plaintiff's objections and decline to adopt Magistrate Judge Saporito's R&R. This case will be remanded for further proceedings and a proper analysis of the case in light of the controlling weight that should be granted to Dr. Garg and Dr. Moskel's opinions and a re-examination of whether plaintiff meets Listings 12.04 or 12.06. An appropriate order follows.

**BY THE COURT:**

**Date: February 11, 2019**     **s/ James M. Munley_____**
**JUDGE JAMES M. MUNLEY**
**United States District Judge**